# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | CASE NO. 5:17-CR-26 (MTT) |
| ) | |
| DAVE CARTY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## ORDER

Defendant Dave Carty has moved to dismiss the indictment. Doc. 45. As discussed below, the motion (Doc. 45) is **DENIED**.[1]

## I. BACKGROUND

According to the indictment,[2] Carty and his co-Defendant Isaac J. Culver, III are the former Vice President/Chief Operating Officer and President/Chief Executive Officer, respectively, of Progressive Consulting Technologies, Inc. (PCTI), another co-Defendant. Doc. 1 at 2. All of the Defendants are charged with one count of conspiring to commit wire and mail fraud, ten counts of wire fraud, one count of mail fraud, and one count of laundering the proceeds of unlawful activity as part of their

---

[1] Defendant Isaac Culver, III has moved to adopt Carty's motion. Doc. 48. But pursuant to the parties' proposed amended scheduling order, which the Court adopted, motions were due on or before February 23, 2018. Docs. 42 at 1; 44. Culver filed his motion on March 12, several weeks after the deadline. Doc. 48. Culver has offered no explanation for the untimeliness on his motion, and the Court **DENIES** his motion to adopt (Doc. 48). Had the Court allowed Culver to adopt the motion, the Court would, of course deny the motion for the same reasons it is denying Carty's motion.

[2] In determining whether a criminal offense has been stated, the court must take the allegations in the indictment as true. *United States v. Cadillac Overall Supply Co.*, 568 F.2d 1078, 1082 (5th Cir. 1978); *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding that all decisions of the former Fifth Circuit dated prior to October 1, 1981 constitute binding Eleventh Circuit precedent).

actions in relation to a $3,768,000.00 contract with the Bibb County School District to purchase devices, support services, and installation of new technology devices for BCSD.  *See generally* Doc. 1.

The indictment consists of 21 pages of detailed information regarding the background, charges, and general information surrounding the allegations that led to the indictment.  *See generally* Doc. 1.  The indictment begins with a fourteen-paragraph "General Introduction," providing background and general information on the Defendants, other parties involved, and the general circumstances that gave rise to the indictment.  *Id.* at 1-3.  Count I of the indictment charges the defendants with conspiracy to commit wire and mail fraud in violation of 18 U.S.C. §§ 1341, 1343, and 1349.  Doc. 1 at 1, 3-13.  Counts II through XI charge the defendants with ten substantive counts of wire fraud in violation of 18 U.S.C. § 1343.  *Id.* at 1, 14-17.  Count XII charges the defendants with one substantive count of mail fraud in violation of 18 U.S.C. § 1341.  *Id.* at 1, 16-17.  Count XIII charges the defendants with conspiracy to launder the proceeds of unlawful activity in violation of 18 U.S.C. § 1956.  *Id.* at 1, 18.

Now, Carty moves to dismiss the indictment, alleging that the indictment fails to sufficiently allege elements of the accused crimes.  Doc. 45.

## II. DISCUSSION

### A. Sufficiency of a Criminal Indictment

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  "An indictment is sufficient if it: (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the

accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." *United States v. Lang*, 732 F.3d 1246, 1247 (11th Cir. 2013) (internal quotation marks and citation omitted). "If the indictment 'provides facts and the specific statute under which the defendant is charged, the [C]ourt will find the indictment sufficient.'" *Id.* (internal quotation marks and citation omitted). "[W]hen analyzing challenges to the sufficiency of an indictment, courts give the indictment a common sense construction, and its validity is to be determined by practical, not technical, considerations." *United States v. Gold*, 743 F.2d 800, 812 (11th Cir. 1984) (internal quotation marks and citation omitted). On a motion to dismiss the indictment, a district court must not resolve the merits of the allegations. *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987). Finally, in determining whether an indictment is insufficient, a court must "focus . . . on the facts as alleged in the indictment, which [the court] view[s] in favor of the [G]overnment and assume[s] to be true." *United States v. Sharpe*, 438 F.3d 1257, 1259 (11th Cir. 2006) (emphasis omitted).

**B.** **Charges in the Indictment**

The indictment alleges one count of conspiracy to commit wire fraud and mail fraud, ten counts of wire fraud, one count of mail fraud, and one count of laundering the proceeds of unlawful activity. Doc. 1. To allege a conspiracy to commit wire fraud, the government must only demonstrate that "the defendant knowingly and voluntarily agreed to participate in a scheme to defraud and that the use of the interstate wires in furtherance of the scheme was reasonably foreseeable." *United States v. Hasson*, 333 F.3d 1264, 1270 (11th Cir. 2003) (citation omitted). "Mail and wire fraud are analytically

identical save for the method of execution." *United States v. Bradley*, 644 F.3d 1213, 1238 (11th Cir. 2011). Both occur when "a person (1) intentionally participates in a scheme or artifice to defraud another of money or property, and (2) uses or 'causes' the use of the mails or wires for the purpose of executing the scheme or artifice." *Id.* (citations omitted).

To establish a "scheme or artifice to defraud," the Government must offer proof of "a material misrepresentation, or the omission or concealment of a material fact calculated to deceive another out of money or property." *Id.* (quoting *United States v. Maxwell*, 579 F.3d 1282, 1299 (11th Cir. 2009)). "A misrepresentation is material if it has 'a natural tendency to influence, or [is] capable of influencing, the decision maker to whom it is addressed.'" *Maxwell*, 579 F.3d at 1299 (quoting *Hasson*, 333 F.3d at 1271).

Finally, "[p]roof of intent to defraud is necessary to support conviction for mail and wire fraud." *Bradley*, 644 F.3d at 1239. The Eleventh Circuit instructs that "[t]o gauge a defendant's intent to commit a fraudulent scheme," one "must determine whether the defendant attempted to obtain, by deceptive means, something to which he was not entitled." *Id.* at 1240. An intent to defraud for purposes of mail and wire fraud may be inferred from the defendant's conduct. *Maxwell*, 579 F.3d at 1301. Thus, "[e]vidence that a defendant personally profited from a fraud may provide circumstantial evidence of an intent to participate in that fraud." *United States v. Naranjo*, 634 F.3d 1198, 1207 (11th Cir. 2011) (citation omitted).

**C.    Carty's Arguments**

Carty argues that the facts alleged in the indictment fail to establish intent to defraud. Doc. 45 ¶¶ 5-11.[3] Rather, Carty asserts, the facts alleged merely establish an "intent to deceive" the victims. *Id.* If the indictment fails to allege wire and mail fraud, Carty argues, then it also fails to allege conspiracy to commit wire and mail fraud and conspiracy to launder the proceeds of unlawful activity, which is predicated upon the other counts. *Id.* ¶ 11.

The Eleventh Circuit recently addressed the meaning of "defraud" in the context of the wire fraud statute and emphasized the importance of distinguishing between schemes to "defraud," which violate the statute, and schemes only to "deceive," which do not. *See generally United States v. Takhalov*, 827 F.3d 1307 (11th Cir. 2016), modified on other grounds on denial of rehearing by *United States v. Takhalov*, 838 F.3d 1168 (11th Cir. 2016).

> There is a difference between deceiving and defrauding: to defraud, one must intend to use deception to cause some injury; but one can deceive without intending to harm at all. Thus, deceiving is a necessary condition of defrauding but not a sufficient one. Put another way, one who defrauds always deceives, but one can deceive without defrauding.
>
> For this reason, the law in the Eleventh Circuit makes clear that a defendant 'schemes to defraud' only if he schemes to "depriv[e] [someone] of something of value by trick, deceit, chicane, or overreaching." But if a defendant does not intend to harm the victim—"to obtain, by deceptive means, something to which [the defendant] is not entitled"—then he has not intended to defraud the victim.

*Id.* at 1312-13 (alterations in original) (citations omitted). Critically, "a 'scheme to defraud,' as that phrase is used in the wire-fraud statute, refers only to those schemes

---

[3] Carty points out that mail fraud and wire fraud are "analytically identical" in most ways and discusses the intent element as to both crimes. Doc. 45 ¶ 4 (citations omitted).

in which a defendant lies about the nature of the bargain itself," for example, where a defendant lies about the price of goods, or lies about the characteristics of goods. *Id.* at 1313-14. In other words, "schemes that depend for their completion on a misrepresentation of an essential element of the bargain . . . violate the mail and wire fraud statutes," and "schemes that do no more than cause their victims to enter into transactions that they would otherwise avoid . . . do not . . . ." *Id.* at 1314 (quotation marks and citations omitted).

The indictment alleges BCSD, after PCTI misrepresented its qualifications, entered into a contract with PCTI for project management services. Doc 1 at 6-8. That contract provided PCTI could "not perform any portion of a project with [its] own forces except as may be approved by BCSD." *Id.* at 7. The Defendants then induced CompTech, through various misrepresentations, to participate in a sham transaction. *Id.* at 8-11, 14-16. With CompTech's assistance, Defendants represented to BCSD that CompTech was the vendor of computer hardware when, in fact and in violation of the bargain struck with BCSD, Defendants were the vendor. *Id.* at 8-10, 12. At Culver's direction, CompTech prepared a false invoice identifying it as the vendor and including CompTech's GSA schedule number on the invoice. *Id.* at 9. To get the invoice paid, Culver represented to BCSD personnel that the purchase had been approved, when in fact it had not. *Id.* at 9-10. After the $3,768,000.00 invoice was paid, Culver directed CompTech to remit all but $78,260.00 to PCTI. *Id.* at 10-11. PCTI then paid $1,749,000.00 to purchase the hardware. *Id.* at 10. On top of all that, the hardware as sold to BCSD was effectively useless. *Id.* at 11. Finally, the indictment alleges that Culver and Carty received checks from PCTI totaling $120,000.00 and $148,000.00,

respectively, and these alleged facts constitute "circumstantial evidence of an intent to participate in th[e] fraud." *Id.* at 13; *Naranjo*, 634 F.3d at 1207.

In short, the Defendants represented to BCSD that they, acting as BCSD's project manager, had procured from a third party a legitimate contract to purchase computers for $3,768,000.00 when, in fact, the Defendants sold BCSD the computers, computers that only cost the Defendants $1,749,000.00. That scheme struck at the heart of BCSD's bargain with PCTI. Clearly, the indictment alleges not deceit that allowed the Defendants to profit, but with BCSD getting what it bargained for, but rather a calculated scheme to defraud BCSD of essential elements of its bargain. Accordingly, the indictment sufficiently alleges the elements of wire and mail fraud, as well as conspiracy to commit wire and mail fraud.

Finally, Carty argues that the count alleging a conspiracy to launder the proceeds of unlawful activity is predicated upon the mail and wire fraud counts and, because those claims are insufficient, Count XIII is insufficient as well. Doc. 45 ¶ 11. However, as discussed above, the Court finds that those predicate counts are not insufficiently alleged, and the motion to dismiss Count XIII must also be denied.

## CONCLUSION

The Defendant's motion to dismiss the indictment (Doc. 45) is accordingly **DENIED**.

**SO ORDERED**, this 13th day of April, 2018.

S/ Marc T. Treadwell<br>
MARC T. TREADWELL, JUDGE<br>
UNITED STATES DISTRICT COURT