**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **CASE NO. 5:17-CR-26 (MTT)** |
| **DAVE CARTY, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
|                             | ) | |

## ORDER

The Government has noticed its intent to use evidence pursuant to Federal Rule of Evidence 404(b). Docs. 49; 50; 51; 52; 53; 54. In briefs and during a hearing, the parties have agreed that most of the Government's notices do not implicate Rule 404(b) evidence because the noticed evidence is not extrinsic. *See generally* Docs. 61; 62; 63. Only the evidence discussed below, which involves an unrelated transaction and bribes paid to facilitate that transaction, is extrinsic evidence potentially admissible under Rule 404(b). Based on the Government's proffer, the Government has not established that this extrinsic evidence is admissible.

## I. BACKGROUND

The charges against Defendants Dave Carty, Isaac J. Culver III, and Progressive Consulting Technologies, Inc. arise from a contractual relationship between the Defendants' company, Progressive Consulting Technologies, Inc., and the Bibb County School District. *See generally* Doc. 1. According to the Government, the School District retained Progressive as its project manager to oversee a multi-million dollar technology

upgrade for the School District.[1]  In that role, Progressive was to represent the School

District's interests in relationships with various vendors of products and services.  As the

project manager, Progressive—and hence the Defendants—were contractually barred

from providing those products and services.  Yet, according to the Government, the

Defendants promptly moved to deceive the School District through various schemes

intended to mask the fact that the Defendants, rather than independent contractors

vetted by Progressive, were providing products and services.  The charged offenses

arise from only one of these deceptions, the purchase of 15,000 computer terminals

(the "computer hardware transaction").

According to the Government, that scheme worked like this.  The Defendants

induced CompTech Computer Technologies, Inc., with whom the Defendants had

previous relationships, to act as a "pass through" for the computer hardware project.

The Defendants provided CompTech with the details of a proposal to the School District

to sell and install the computer terminals for the total amount of $3,768,000.00.  The

Defendants instructed CompTech to use this information to prepare an invoice on

CompTech's letterhead.  The Defendants then told CompTech to submit the false

invoice to the School District.  As far as the School District knew, the Defendants, as the

School District's representative, had negotiated an arm's-length agreement with

CompTech that protected the School District's interests, that is, that the School District

was getting the products and services it needed at a fair price.  An example of the

Defendants' deceptive tactics is found in a concocted email Culver purportedly sent to

---

[1] The Government alleges that in an email Defendant Culver characterized as "totally made up" a
professional reference making up the Defendants' qualifications to induce the School District to retain
Progressive as its project manager.  Doc. 1 at 6.

CompTech thanking CompTech for "'agreeing to lower CompTech's profit margins on the sales of equipment to the school system.'" Doc. 1 at 10. All of this was done to conceal from the School District that Progressive was the actual vendor for the computer hardware project and that the Defendants intended to profit mightily, at the School District's expense, in the transaction.

According to the Government, the scheme worked perfectly, at least initially. The Defendants vouched for the false CompTech invoice and the School District wired $3,768,000.00 to CompTech. CompTech then sent $3,689,740.00 to Progressive. CompTech retained $78,260.00 for itself, apparently for its services as the pass-through agent and to pay what CompTech thought was a General Services Administration fee owed because CompTech had put its GSA credentials on the false invoice. Progressive then purchased the computer terminals for $1,749,000.00. The computer terminals were shipped to the School District, but they lacked key components, and of the 15,000 terminals delivered, only 300 were ever installed. The remaining terminals sit in a warehouse because the School District found them "unusable as the key components were not purchased." *Id*. at 13. In short, the School District "paid $3,768,000.00 for goods and services for which [Defendants] paid only $1,749,000.00" and the School District got, essentially, nothing. *Id*.

Again, this is the only transaction for which the Defendants have been indicted. The Government wants to introduce, pursuant to Rule 404(b), evidence of another transaction, a transaction that is the subject of a separate indictment against other defendants. Doc. 52. On the surface, that transaction is similar to the computer hardware transaction. It involved a $3,247,200 contract purportedly negotiated by

Progressive as the School District's project manager for the development of software for the School District (the "software transaction"). *Id.* at 4. The nominal ("on paper") vendor for the software transaction was a construction company, Pinnacle/CSG, Inc. *Id.* at 3. Though conceding the facts are somewhat murkier, the Government alleges the Defendants were the actual vendor for the software transaction just as they were the vendor in the computer hardware transaction. *Id.* at 4, 6.

But the similarities are truly only on the surface. First, the Government has not been able to prove that any of the $3,247,200.00 paid in the software transaction found its way to the Defendants. Second, the software transaction was facilitated by bribes paid to the School District's former superintendent, Romain Dallemand. The Government has not been able to establish that the Defendants were involved in the payments to Dallemand or that those payments facilitated the computer hardware transaction.

Finally, the murky facts suggest the software transaction was structured substantially differently, and certainly was more convoluted, than the straightforward computer hardware scheme to defraud. There is no question that CompTech was not the vendor in the computer hardware transaction. But Pinnacle and the Defendants vehemently maintain that Pinnacle was the vendor in the software transaction. *See* Doc. 61 at 9. In fact, Pinnacle, about six months after it agreed to develop the software, threatened to sue the School District, alleging that the School District had somehow thwarted Pinnacle's performance as the software developer. *Bibb Cty. Sch. Dist. v. Dallemand*, 5:16-cv-549-MTT, letter from Knowles, Doc. 219-1 (M.D. Ga. Feb. 26, 2018). Pinnacle has now asserted that claim as a counterclaim in a lawsuit brought by

the School District in this Court, in which the School District alleges, among many other things, that Pinnacle and Progressive and their principals defrauded the School District in the software transaction. *See generally Bibb Cty. Sch. Dist. v. Dallemand*, 5:16-cv-549-MTT, Countercl., Doc. 197 (M.D. Ga. Jan. 18, 2018). While the Government cites evidence suggesting that the elaborate structure of the software transaction was constructed to hide the Defendants' involvement in the software transaction, the Defendants point to written agreements between Progressive and Pinnacle demonstrating, they say, that Progressive's role in the development of the software was well within its proper role as the School District's project manager. About the only thing clear is that the software transaction was substantially different than the structure of the computer hardware transaction.

## II. ANALYSIS

### A. 404(b) Standard

Federal Rule of Evidence 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The Eleventh Circuit has stated that Rule 404(b) is a rule of inclusion and that the test for admissibility of 404(b) evidence is as follows:

> To be admissible under Rule 404(b)(2), a prior act (1) must be relevant to an issue other than defendant's character, (2) must be sufficiently proven to permit a jury determination that the defendant committed the act, (3) must have probative value that is not substantially outweighed by unfair

prejudice, and (4) must otherwise satisfy Federal Rule of
Evidence 403.

*United States v. Nerey*, 877 F.3d 956, 974 (11th Cir. 2017) (citing *United States v.
Eckhardt*, 466 F.3d 938, 946 (11th Cir. 2006)).  "In assessing the probative value of the
extrinsic evidence [pursuant to Rule 404(b)], we evaluate the Government's incremental
need for the evidence to prove guilt beyond a reasonable doubt, 'the overall similarity of
the extrinsic and the charged offenses and the closeness or remoteness in time of the
charged to the extrinsic offense.'"  *United States v. Ellisor*, 522 F.3d 1255, 1268 (11th
Cir. 2008) (quoting *United States v. Parr*, 716 F.2d 796, 805 (11th Cir. 1983)).

## B.      The Government's Motion

The Government contends that evidence of the software transaction is
admissible to show "Defendants' motive, intent, plan, and knowledge employed in their
scheme to defraud the Bibb County School District by using other businesses . . . to
hide their involvement in purchases from the Bibb County School District."  Doc. 62 at 6-
7.  But, as discussed above, once the surface is scratched, the structure of the software
transaction was substantially different than the computer hardware transaction.  It is not
at all clear, at this point, that Pinnacle was a nominal, "on paper," vendor as CompTech
clearly was.  And, as far as the Government knows now, the software transaction did
not involve hidden payments to the Defendants.  The Government may be right; the
Defendants may have deceived the School District in some way in the software
transaction.  But the road the Government will have to take to prove that is a much
different road than it will take in the computer hardware transaction.

That leads to the fundamental flaw in the Government's Rule 404(b) argument:
the Government has not demonstrated any legitimate need to introduce evidence of the

software transaction.  At this point, the facts allegedly demonstrating the Defendants'
deception in the computer hardware transaction are simple, straightforward, and
seemingly beyond dispute.  The Court does not suggest the Defendants have conceded
they intended to deceive the School District.  But the Government relies on documented
facts, including the Defendants' paper trail, to prove that intent.  Thus, the jury does not
need the much more convoluted evidence of the software transaction to establish that
the Defendants intended to deceive the School District when they hid their true role in
the computer hardware transaction.  *See Parr*, 716 F.2d at 805 ("Thus, if the
Government has a strong case on the intent issue, the extrinsic offense may add little
and consequently will be excluded more readily." (citation and quotation marks
omitted)); *see also United States v. Sterling*, 738 F.3d 228, 238 (11th Cir. 2013) ("In
other words, if the government can do without such evidence, fairness dictates that it
should; but if the evidence is essential to obtain a conviction, it may come in.  This may
seem like a heads I win; tails you lose proposition, but it is presently the law." (citation
and quotation marks omitted)).

It is also clear that the Government, at this point, has not established that the
Dallemand bribes are admissible Rule 404(b) evidence.  Although the Government does
not contend bribery played a role in the computer hardware transaction, the
Government argues that evidence of the bribes is nonetheless admissible.  First, the
Government "believes that it is important for the jury to understand why [Dallemand]
acted as he did."  Doc. 62 at 9.  At the hearing, the Government expanded on this point.
If the jury were only told that Dallemand had authorized the payment of the CompTech
invoice, the jury might conclude that the invoice was proper.  At the hearing, the

Government also, in a classic bootstrap argument, stated that the jury needs to know that Dallemand has pleaded guilty to bribery and is cooperating with the Government so the jury can adequately assess his credibility. Of course, if Dallemand does not testify, there will be no reason to assess his credibility.

But the Government's biggest problem is that it simply cannot explain how a bribe in the software transaction can be probative of any legitimate issue in the bribeless computer hardware transaction. Clearly, under the Government's theory of the case, a bribe was not necessary to get the School District to pay the CompTech invoice. Rather, the Government's case, as it now stands, is that the Defendants defrauded the School District by falsely representing to the School Board that Progressive, as the School District's project manager, had arranged for an independent vendor, CompTech, to provide computer hardware at a fair price. Getting the School District to pay CompTech's invoice was certainly critical to the success of the scheme, but the invoice, on its face, was not improper. Simply put, under the Government's theory of the case, it was not necessary to bribe anybody to get the CompTech invoice paid because, as far as anyone at the School District knew, it was a proper invoice.[2] Given that, there is no need for the jury in this case to know about bribes that were, apparently, necessary to facilitate a separate transaction.

---

[2] Here too, however, the facts are murky. As discussed at the hearing, there is evidence that could suggest that Dallemand was bribed to facilitate the payment of the CompTech invoice. And there is evidence that some School District officials were concerned over the handling of the CompTech invoice. Even so, the Government does not allege that Dallemand acted improperly when he ordered the CompTech invoice paid, and the case the Government says it plans to now present has nothing to do with misconduct by Dallemand or any other School District official.

## III. CONCLUSION

For the reasons discussed above, the Government has not met its burden under Rule 404(b) to establish the admissibility of the noticed evidence. Of course, this ruling is preliminary and circumstances may change. But absent further order of this Court, the Government shall not refer to the noticed evidence in the presence of the jury.

**SO ORDERED**, this 25th day of May, 2018.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT